UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

E<small>MILY</small> D<small>UVALL</small>, <small>ET AL</small>.  P<small>LAINTIFFS</small>

v.  N<small>O</small>. 1:24-cv-70-BJB

CSX T<small>RANSPORTATION</small>, I<small>NC</small>. <small>ET AL</small>.  D<small>EFENDANTS</small>

\*\*\*\*\*

### O<small>PINION AND</small> O<small>RDER</small>

This case arises from the death of Timothy "Josh" Duvall, who was struck by a CSX Transportation train while he was leaving Park City Stone's quarry. DN 1-2 at 9–10. His surviving spouse and their minor children—all residents of Kentucky—sued CSX (a Florida-and-Virginia corporation) and Park City (a Kentucky LLC) in state court seeking damages for Mr. Duvall's death. *Id.* at 21. That court dismissed Park City, and CSX removed to this Court. The question now is whether the suit should proceed in federal or state court.

The answer depends on who was responsible for Park City's "final" dismissal by the state trial court. If the Plaintiffs' voluntary actions left the parties completely diverse and therefore the case removable, then it remains here; if the dismissal was involuntary, however, then removal was improper—and the case returns to Barren Circuit Court.

At the outset, Park City sought to dismiss the claims against it—arguing it owed no duty to Mr. Duvall. *Id.* at 170–77. The Plaintiffs opposed the motion, *id.* at 210–16, but to no avail. The Barren Circuit Court dismissed Park City, ruling it lacked a legal duty to Mr. Duvall. *Id.* at 241. But the trial court did so in an order that didn't make clear whether it was immediately appealable. Under Kentucky law, orders dismissing individual defendants from a multi-defendant suit are ordinarily not immediately appealable. K<small>Y</small>. R. C<small>IV</small>. P. 54.02. But such an order may be if it includes specific language to that effect: namely, that the order is "final" and "no just reason for delay" stands in the way of an appeal. *Id.* The order dismissing Park City, however, lacked that language. *Id.* at 234–41.

This created a dilemma for the Plaintiffs, who wished to appeal the quarry's dismissal but litigate the railroad's negligence. Should they turn to the appellate or trial courts? The Plaintiffs looked first to the trial court, seeking reconsideration of the dismissal. *Id.* at 242–47. The judge said no—but, on his own volition, designated the order as "final and appealable." *Id.* at 280. For practical purposes, this made clear enough the judge's view that the Plaintiffs' recourse regarding the quarry's

1

dismissal could be found in the appellate court. But for legal purposes, the order lacked the additional language—"no just reason for delay"—typically required to take an immediate appeal of an otherwise interlocutory order. *See id.* at 271–73; KY. R. CIV. P. 54.02 (requiring such language).[1] If the Plaintiffs didn't promptly appeal, that delay might doom their claims against the quarry because the clock for filing an appeal could run out. But if they did appeal, the Court of Appeals might decide it lacked jurisdiction over the quarry-only issues (because the trial court hadn't made its dismissal order appealable) and re-route the Plaintiffs straight back to Barren Circuit Court.

Concerned about the ambiguous finality designation, the Plaintiffs asked the trial judge to amend his reconsideration order and remove the finality designation. *Id.* at 274–76. That clarification, they urged, would allow for a single appeal involving both Defendants at the end of the case. *Id.* As they later explained in this Court, the Plaintiffs didn't necessarily insist on an immediate appeal; rather, they wanted to avoid risking a situation in which the Court of Appeals determined that their appeal of the quarry's dismissal was too early or their appeal of a final judgment involving CSX was too late. *See* Reply (DN 20) at 3. In the alternative, if the trial judge declined to remove the finality designation, the Plaintiffs asked that he at least add the "no just reason for delay" language. Those words would've allowed them to proceed with their appeal of the quarry's dismissal without having to wait for a final judgment involving CSX—a wait that would risk the Court of Appeals rejecting the appeal for undue delay. State Court File at 274–76. Park City *also* asked the judge to certify the order as final and appealable, *id.* at 281–87, which he did, *id.* at 289–91. So the Plaintiffs appealed the quarry's dismissal—naming both Park City and CSX as parties to the appeal. Plaintiffs' Notice of Appeal (DN 14-2) at 1. And they prepared to simultaneously proceed on a parallel track against CSX in Circuit Court.

CSX, however, had another destination in mind. After the interlocutory appeal took the claims against the quarry from Barren Circuit Court to the Kentucky Court of Appeals, the parties left in Circuit Court were newly and completely diverse. So CSX removed the claims against it to federal court. Notice of Removal (DN 1) at 1. In CSX's eyes, the case was newly ripe for removal.

Now the Plaintiffs have asked this Court to remand the case against CSX to Barren Circuit Court. DN 14. Since they filed the motion, moreover, the Kentucky

---

[1] "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Court of Appeals decided to hold the appeal in abeyance pending this Court's ruling. State Court of Appeals Order (DN 20-1) at 2.

At a hearing on the remand motion, counsel for both sides made clear that timing concerns drove their actions: just as the Plaintiffs worried that a deferred appeal could doom their claims against the quarry, CSX fretted that a deferred removal might be held untimely if the Court of Appeals didn't quickly decide whether the quarry would remain a party. Federal law imposes a one-year deadline for removal in a diversity case and a further 30-day deadline for removal after a defendant receives notice that a case has become removable. 28 U.S.C. § 1446(b)–(c). Both sides, it turns out, consent to a remand—so long as neither side's rights are prejudiced should the case return to this Court. So the parties agreed to investigate whether the § 1446 deadlines were waivable and supplement the record following the hearing. Their joint filing reported (mixed and inconclusive) research regarding the extendibility of the 30- and 365-day statutory remand deadlines. DN 22 at 2–3 (citing *Naji v. Lincoln*, 665 F. App'x 397, 402 (6th Cir. 2016), *Page v. City of Southfield*, 45 F.3d 128, 134 (6th Cir. 1995), and *Nessel v. Enbridge Energy, LP*, 104 F.4th 958 (6th Cir. 2024)). And it included a joint motion to remand—on the understanding that the Plaintiffs would not object (on timeliness or any other grounds, apparently) to re-removal if the case returns to state court and the quarry's dismissal is affirmed. *Id.* at 3.

Parties' "consen[t] to remand, standing alone," of course, "is not enough to grant" the motion; "remand must be proper" under the statutory scheme enacted by Congress." *Rowe v. JPMorgan Chase Bank, N.A.*, No. 2:24-cv-554, 2024 WL 4328940, at *2 n.1 (S.D. Ohio Sept. 27, 2024), appeal dismissed, No. 24-3858, 2024 WL 5279791 (6th Cir. Nov. 5, 2024) (quoting *Howell v. Fastbuy, Inc.*, No. 2:22-cv-2377, 2023 WL 2483766, at *2, (S.D. Ohio Feb. 21, 2023), and citing § 1447(c)). So despite the parties' laudable efforts to collaborate and reach a mutually agreeable disposition of this motion, that alone cannot decide the jurisdictional question facing the Court.

But the Court reaches the same result anyway: remand is appropriate here.

A case that was not removable at its inception (say, for lack of complete diversity or because of the forum-defendant rule), may "becom[e] removable if the plaintiff performs a *voluntary* act which effects a change rendering a case subject to removal by the defendant." *McCraw v. Lyons*, 863 F. Supp. 430, 433 n.5 (W.D. Ky. 1994) (citing *DeBry et al. v. Transamerica Corp.*, 601 F.2d 480, 486–88 (10th Cir. 1979)) (emphasis added). As explained in WRIGHT & MILLER, "[s]ome federal courts" have held that "a state-court suit that originally could not have been removed to federal court may become removable only through a 'voluntary' act of the plaintiff." FEDERAL PRACTICE & PROCEDURE § 3721 (rev. 4th ed.). Conversely, these courts recognize that if a plaintiff "states a non-removable case in his initial complaint, *involuntary* changes will not make the case removable." *Cowing v. Lockheed Corp.*,

No. 5:15-cv-129, 2016 WL 1271029, at *2 (E.D. Ky. Mar. 29, 2016) (quotation omitted). This is known as the "voluntary-involuntary rule," *see Saylor v. Gen. Motors Corp.*, 416 F. Supp. 1173, 1175 (E.D. Ky. 1976), or the "voluntary/involuntary rule," *Cobalt Mining, LLC. v. Bank of Am. N.A.*, No. 3:07-cv-598S, 2008 WL 695887, at *2 (W.D. Ky. Mar. 12, 2008); 14C WRIGHT & MILLER § 3723 nn.21, 23 (collecting cases). It "'conditions removability on voluntary actions of a plaintiff, rather than factors beyond a plaintiff's control.'" *Davis v. McCourt*, 226 F.3d 506, 510 n.3 (6th Cir. 2000) (quoting *Hollenbeck v. Burroughs Corp.*, 664 F. Supp. 280, 281 (E.D. Mich. 1987)). Though not every circuit has addressed the voluntary/involuntary rule, the Sixth Circuit has adopted it. *Compare id.* at 510 (applying the voluntary/involuntary rule), *with Shrewsberry v. Hobby Lobby Stores, Inc.*, No. 2:18-cv-30, 2018 WL 2194036, at *2 (M.D. Tenn. May 14, 2018) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992)) (noting that not every circuit has addressed the voluntary/involuntary rule).

This rule is the crux of the remand motion: Park City's dismissal means that the two parties subject to the removal notice are properly within this Court's diversity jurisdiction.[2] The only question is whether the Plaintiffs themselves brought it about. Did the Plaintiffs' actions in requesting clarity on the finality of Park City's dismissal qualify as a "voluntary act" allowing for removal? If so, CSX may not remove under § 1441; if not, removal is proper.

Under the circumstances here (which neither party has located in other judicial precedents—even at a high or superficial level), the Plaintiffs did not take affirmative steps to create diversity jurisdiction. Rather they *opposed* the quarry's dismissal at every stage. CSX initially described the Plaintiffs' request (for clarity on the dismissal order's appealability) as voluntary. In reality, however, the Plaintiffs took this step to continue challenging Park City's dismissal in the Court of Appeals. Their ultimate goal was to keep the quarry in the case. Before that step, the Plaintiffs consistently opposed Park City's dismissal, moved for reconsideration, and specifically requested that the Circuit Court remove its finality designation. Thus the record contradicts CSX's assertion that the Plaintiffs "invited" the finality designation and thereby rendered the case removable. Response at 13. This was hardly the Plaintiffs' preferred course: only as a "less prefer[red]" alternative did they request the inclusion of the "no just reason for delay" language—to "make the [c]ourt's intentions clear" so that they'd "know how to protect their rights." Reply at 3. Moreover, the fact that the Plaintiffs appealed Park City's dismissal further demonstrates their intent to "prosecut[e] [their] claim to the furthest extent possible," reinforcing that the dismissal was involuntary and that remand is appropriate. *Huff v. AGCO Corp.*, No. 5:18-cv-469, 2019 WL 1177970, at *3 n.1 (E.D. Ky. Mar. 13, 2019).

---

[2] At least assuming Park City is no longer a party, as CSX's argument does, and further assuming Park City's consent (as a "former" party) was not required under 28 U.S.C. § 1441; *see, e.g.*, *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 692 (W.D. Ky. 2019).

4

At every turn, therefore, the Plaintiffs have sought to avoid premature finality and preserve their claims in a single proceeding—or, barring that, a single jurisdiction in which the appeal and CSX claims were all heard in state court. Unlike the plaintiff in *Cowing*, the Plaintiffs didn't affirmatively seek a finality designation. *Cowing*, 2016 WL 1271029, at *2–3. Additionally, the rationale behind the voluntary/involuntary rule supports remand. Courts aim to avoid the "yo-yo effect," in which cases are removed to federal court only to be remanded if state appellate courts reverse a dismissal. *See Cobalt Mining*, 2008 WL 695887, at *2 (quotation omitted). If the Kentucky Court of Appeals reinstates Park City as a defendant, that would (again) destroy diversity jurisdiction. Remand is appropriate to avoid such jurisdictional whiplash.

In reaching this decision, the Court notes (without prematurely accepting) the parties' joint submission that the Plaintiffs would not object to CSX removing the case again should the Kentucky appellate court affirm Park City's dismissal. *See* DN 22 at 3; 28 U.S.C. § 1446(c)(1) (requiring that if a case is based on diversity jurisdiction, the defendant must remove it within one year of when the lawsuit was first filed in state court). The parties have identified no precedent answering the specific question whether CSX might re-remand in these circumstances despite the statutory time limit. In fact, they point to recent Sixth Circuit precedent both limiting federal courts' equitable authority to modify statutory removal deadlines, *see Nessel*, 104 F.4th 958, and treating such removal deadlines as subject to waiver absent a timely objection, *see Naji*, 665 F. App'x at 402; *Page*, 45 F.3d at 134. Despite this tension in the caselaw, it appears at least plausible that CSX might successfully return to federal court, should the Court of Appeals affirm Park City's dismissal. While not dispositive, the parties' joint remand request certainly supports more than it undermines the Court's decision.

The Court therefore grants the initial (DN 14) and joint (DN 22) motions to remand and remands the Plaintiffs' claims against CSX to Barren Circuit Court. CSX's initial attempt to remove the case was understandable but ultimately improper under the voluntary/involuntary rule. This case may proceed in state court, so the Court strikes it from the federal docket.